Walworth, Chancellor,
said the case of Henry and Pierce v. The Bank of Salina, (ante, p. 523,) which had just been decided, disposed of this case. Both were alike in principle, and his opinion in the one expressed his views fully in regard to the other.
Hopkins, Senator.
The right of one person to sue for his own benefit in the name of another, has long been recognized. (11 John. Rep. 53; 7 Cowen, 176; 3 John. Cas. 254.) And at the time of the passage of the act of 1837, under which the present question arises, the terms “plaintiff in interest” and “plaintiff on the record” were in common use. The act of 1837 makes use of the term “plaintiff,” without any qualification ; and I see no reason why the actual plaintiff or the plaintiff in interest who uses the name of another in place of his own, that is, who adopts for himself another name, (for it amounts to nothing less,) should not be deemed to be “the plaintiff” within the meaning of the act. If it was intended to restrict its meaning to the plaintiff on the record, why was not that expression, then in common use and well understood, made use of? If the legislature did not intend to include the actual plaintiff in interest, then they might as well have passed no law on the subject. But it is urged that, if a plaintiff in interest may be compelled to testify, he may subject himself to the penalty provided by the sixth section of the act. If, however, we adjudge that he may be compelled to testify under the second section, then must he necessarily be protected under the eighth section, which declares that the testimony of “ any plaintiff” shall not be used against him upon any indictment &c.
*550 It is said that the statute may induce the crime of perjury, that it is objectionable on account of its immoral tendency, and should therefore be strictly construed. I do not see how a rigid construction which shall prevent calling a plaintiff in interest as a witness can avail any thing, since no such rigid construction can prevent a defendant filing his bill in chancery, making the real plaintiff a party, and requiring him to answer under oath; in which case, under the existing laws, there would be the same inducement to perjury as if he were called to testify in an action at law. Give the act a construction which would prevent the defendant calling the plaintiff in interest to testify in a suit at law, and the defendant is driven to a court of equity, the necessity as well as expense of which it was one object no doubt of the act of 1837 to avoid.
At all events, the plain intention of the legislature should be carried out, which cannot be done if the plaintiff in interest, not being the plaintiff on record, cannot be called as a witness. If the policy of the law is questionable, it is not the province of this court to amend it. The judgment below should be reversed.
Bhoades, Senator,
said he should vote for reversing the judgment of the court below on the sole ground that, since the decision just made in Henry and Pierce v. The Bank of Salina, the question as to Clift’s obligation to testify under the second section of the act of 1837, must be deemed settled.
Wright, Senator,
observed that the question in this case was not whether usury laws were right or wrong, nor whether the taking of usury could be justified on principles of sound morality ; although one member of the court, [Senator Boot,] in the elaborate opinion just delivered by him in Henry and Pierce v. The Bank of Salina, had discussed both those questions with much ability. The taking of more than seven per cent, for the use of money has for many years been unlawful in this state, and the act of 1837 rendered the practice criminal. The simple question before us therefore is, whether Clift, one of the parties *551 against whom this suit was originally commenced, can properly be called the plaintiff, within the second and eighth sections of that act. The second section provides that “ whenever, in an action at law, the defendant shall plead or give notice of the defence of usury &c., he may, for the purpose of proving the usury, call and examine the plaintiff as a witness” &c. The act then makes various provisions regulating proceedings in chancery upon bills filed for discovery and relief in respect to usurious contracts, and the eighth section declares that “ every plaintiff examined as a witness pursuant to the provisions of this act, or any defendant under the provisions of this act, who shall swear falsely shall suffer the pains and penalties of wilful . and corrupt perjury; but the testimony given by any plaintiff or the answer of any defendant <fcc,, shall not be used against such person before any grand jury or on the trial of any indictment against such person.”
It is at least fair to assume, out of respect to those who enacted this law, that they well knew how the terms plaintiff and defendant were understood in the general language of the country, and that they meant so to use them as fo render the law intelligible to those whose conduct was designed to be regulated by it. In the legislature of 1837, moreover, there were many able lawyers who must have been aware that these terms, in their primary and natural import, pointed only to the plaintiff and defendant upon the record, and that such would probably be the construction of them, if not otherwise explained. The bill which resulted in the law in question called forth considerable discussion; and yet during the whole progress of that discussion, so far as I can ascertain, not the slightest allusion was made to any secondary or artificial meaning which might possibly be assigned to these terms, nor to any one as liable to be examined under the second section of the law save the ostensible plaintiff. Lexicographers define the word plaintiff to mean “ the complainant”—“ he who sues or prosecutes”—“ the prosecutor.” When used in legal proceedings it refers the mind at once to the party in whose name a plaint or suit is instituted, and to no one else. I doubt if there be a lawyer in this body *552 or elsewhere, who would advise a client prosecuting a suit in his own name, though for another’s benefit,, that he was not the plaintiff in that suit. At all events I am quite sure that neither lawyer • nor layman can .be found, who, without expecting to render himself chargeable with a forced arid unnatural use of language, would say of a man standing in the relation which Clift does here, the suit having been originally commenced against him, that he was the plaintiff; and yet a reversal of the judgment of the supreme court will virtually'declare that the same person may be both defendant and plaintiff in the same-cause. It is true, there was a severance as to Clift, and the' suit afterwards proceeded against the makers of the note-alone; But that can make no difference; for if Clift was ever “ the plaintiff” in the cause, within the second section of the act of 1837, he was so when the suit was commenced.'
It is no part of our business, while acting in a judicial capacity, to attempt to remedy defects in legislation. Wé are to declare '■ the law; not make it. Nor have we any right, in my opinion, to speculate at large as to the intent of the legislature; but our enquiry should be confined to the intent fairly expressed by the language they have used. If the law' of 1837 omits to provide for all the cases which, in our judgment should have been provided for, it belongs to another department of the government to remedy the defect.
■ I think the judgment of the supreme court is right, and shall therefore vote to affirm it;
■ On the question being put, “ Shall this judgment be reversed ?” the members of the court voted as follows:.
For reversal: The President, the Chancellor, and Senators- Bockee, Deyo, Ely, Hopkins, Porter,, Rhoades, Root, Scovil, Sherwood and Varney—12.
For affirmance: Senators Dixon, Franklin, Mitchell, Putnam, Varían and Wright—6.
Judgment reversed.(a)

 See the resolution at the conclusion of Henry and Pierce v. The Bank of Salina, (ante p. 547.)